FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 19 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ROBERT BERRY,

                                Petitioner,

v.

R. J. CUNNINGHAM, superintendent,

                                Respondent.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
09 CV 3022 (MKB)

MARGO K. BRODIE, United States District Judge:

Petitioner Robert Berry proceeding *pro se* brings the above-captioned petition pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. Petitioner's claim arises from a March 6, 2006 judgment of conviction after a non-jury trial in New York Supreme Court, Queens County, for robbery in the first degree. Petitioner was sentenced as a second violent felony offender to a determinate sentence of ten years' incarceration and five years' post-release supervision. Petitioner appealed his conviction to the New York Appellate Division, Second Department, arguing that the trial court improperly admitted identification testimony that was obtained during a show-up identification procedure. The Appellate Division rejected Petitioner's claim and affirmed his conviction. *People v. Berry*, 856 N.Y.S.2d 228, 229–30 (App. Div. 2008). The New York Court of Appeals denied leave to appeal. *People v. Berry*, 863 N.Y.S.2d 140 (2008). Petitioner raises the same claim in the instant petition. For the reasons set forth below, the petition is denied.

**I.**    **Background**

The evidence at trial established that on May 20, 2004, at approximately 2:10 p.m., Petitioner approached the complainant, Kelvin Stephen, as Stephen was getting into his car. (Trial Tr. 14–15.) Petitioner held a gun to Stephen's waist and pushed Stephen inside the car.

*Id.* Stephen testified at trial that it was a sunny day and that he was able to see the face of the individual who approached him. *Id.* at 17, 20, 25. Stephen described the perpetrator as being a light-skinned black male, wearing a "light striped blue shirt." *Id.* at 22, 49. He made a courtroom identification of Petitioner as the individual who held a gun to his side and pushed him into the car. *Id.* at 17.

Stephen further testified that Petitioner stated "give me all [your] 'F'ing money or [I] will shoot [you]." *Id.* at 18. Stephen emptied his wallet and gave Petitioner a $98 money order and three to four single bills. *Id.* at 20. Petitioner told Stephen to drive away and Stephen complied. *Id.* at 21. A few yards away, Stephen looked back, saw Petitioner get into a tan Acura and wrote the license number of the vehicle on his hand. *Id.* Stephen then drove toward his home and saw Petitioner in the same car, bearing the same license plate. *Id.* at 23. He went inside his home and dialed 911. *Id.* at 24. Police officers arrived, took a statement from him and took him to the police precinct. *Id.* Stephen testified that the police subsequently drove him to a location at Jamaica Avenue and Woodhull Street at approximately 3 p.m. and asked him to identify a suspect. *Id.* at 24–25. Stephen recognized Petitioner as the individual who had robbed him and recognized the car as the getaway vehicle. *Id.* at 25.

On May 20, 2004 at 2:26 p.m., Police Officer Brian Wood was on duty as an undercover officer in an unmarked car when he received a radio transmission to look for a tan Acura with license plate number AHG 2993. *Id.* at 65–66. He spotted a car matching that description and arrested Petitioner, who was driving that car, at about 2:55 p.m. *Id.* at 68–69. When Petitioner asked why he was being handcuffed, Wood told him he was under arrest for being in possession of a stolen vehicle. *Id.* at 84. Stephen was brought to the scene approximately five minutes later. *Id.* at 70. Wood conducted a show-up procedure with Petitioner and Stephen. *Id.* at 70.

Petitioner was standing near the tan Acura, with his hands cuffed behind him, accompanied by two police officers. *Id.* at 85–86. Stephen was in a police vehicle, accompanied by two other officers. *Id.* at 84. Wood did not hear what Stephen said to the other officers. *Id.* at 84–85. After Petitioner was transported to the police precinct, he made two statements prior to being read his *Miranda* rights. *Id.* at 87–88.

Prior to trial, Petitioner moved to suppress the show-up identification, Petitioner's statements to the police and certain property recovered at the time of his arrest. (Def. Opp'n 3.) The trial court held a suppression hearing on January 28, 2005. *Id.* At the suppression hearing, Wood testified that he pulled over a tan Acura with license plate number AHG 2993, arrested Petitioner and placed him in handcuffs. (Hearing Tr. at 8–9.) Wood then asked for Stephen to be brought for a show-up identification procedure. *Id.* at 9. The procedure was conducted at 3:00 in the afternoon. *Id.* at 12–13. Wood testified that Petitioner was standing on the sidewalk, with his hands cuffed behind his back, in very close proximity to Stephen. *Id.* at 23–24. Wood testified that Stephen first identified Petitioner as the perpetrator of the robbery to another officer. *Id.* at 26–27. Immediately thereafter, Wood personally asked Stephen whether the suspect was "the guy that robbed you." *Id.* at 30.

At the conclusion of the hearing, among other motions, Petitioner asked that the identification testimony be suppressed and that any in-court identification by Stephen be precluded. *Id.* at 35. Petitioner argued that the People had the burden of proving that the identification procedure was not suggestive, and they failed to meet that burden because Wood was not present with Stephen during the initial identification procedure, and thus could not testify as to the other officers' conduct at that time regarding whether there were suggestive circumstances. *Id.* at 35–37, 42–43.

3

The court found that the identification procedure was properly classified as a show-up procedure and that the prosecution had met its burden of showing exigent circumstances that would make the procedure not unduly suggestive. (Hearing Tr. 43, 48–49) (citing *People v. Duuvon*, 77 N.Y.2d 541, 543 (1991) ("While showup identifications are generally suspect and disfavored, at-the-crime-scene civilian showup identifications are not presumptively infirm. We emphasize, however, that such showup or identification evidence should not be routinely admissible either. It must be scrutinized very carefully for unacceptable suggestiveness and unreliability. . . . The apprehension of this perpetrator very near the crime scene, coupled with the temporal proximity to the commission of the crime, withstands this scrutiny.")). Thus, Petitioner's motion to suppress the identification evidence was denied. *Id.* at 51.

At trial, Petitioner presented an alibi defense. His fiancée, Donna Gregg, testified that she believed that Petitioner was working at her restaurant from approximately 10:00 a.m. until about 2:30 p.m., when she arrived and found him there. *Id.* at 101–02. Petitioner did not testify. The court delivered its verdict of guilty on December 7, 2005. *Id.* at 160. The court sentenced Petitioner on March 6, 2006, as a second violent felony offender, to ten years of imprisonment, to be followed by five years of post-release supervision. (Sentencing Tr. 3, 11.)

Petitioner appealed his conviction to the New York Appellate Division, Second Department. *People v. Berry*, 856 N.Y.S.2d 228 (App. Div. 2008). Petitioner again argued that the show-up identification procedure was unduly suggestive and lacked exigent circumstances and that the People failed to present adequate testimony about the circumstances of the identification. *Id.* at 229. The Appellate Division affirmed Petitioner's conviction, holding that, "[w]hile showup procedures are generally disfavored, they are permissible, even in the absence of exigent circumstances, when they are spatially and temporally proximate to the commission of

the crime and not unduly suggestive." *Id.* at 229–30. Moreover, the Appellate Division determined that the People had met their "initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness in a pretrial identification procedure." *Id.* at 230. The New York Court of Appeals denied leave to appeal on July 9, 2008. *People v. Berry*, 863 N.Y.S.2d 140 (2008).[1] Accordingly, Petitioner's claims are exhausted. *See* 28 U.S.C. § 2254(b)(1) ("An application for habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State.").

## II. Discussion

### a. Standard of Review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Lafler v. Cooper*, 566 U.S. ---, 132 S. Ct. 1376 (2012).

For the purposes of federal habeas review, "clearly established law" is defined as "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is

---

[1] Petitioner also filed a petition for a writ of error coram nobis in state court, in which he argued that he was denied the effective assistance of appellate counsel. The Appellate Division denied the writ on January 19, 2010. *People v. Berry*, 892 N.Y.S.2d 782 (App. Div. 2010). Petitioner has not raised that issue here.

"contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different from that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule, but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. In order to establish that a state court decision is an unreasonable application, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The decision must be "objectively unreasonable." *Id.* In addition, factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### b. Admission of Identification Testimony

"A defendant's right to due process includes the right not to be the object of suggestive police identification procedures that make an identification unreliable." *United States. v. Douglas*, 525 F.3d 225, 242 (2d Cir. 2008). In determining whether identification testimony is admissible, "reliability is the linchpin." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *see also Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) ("Reliability is the touchstone for the admission of eyewitness identification testimony pursuant to the Due Process Clause of the Fourteenth Amendment."). Where a defendant challenges the admission at trial of eye-witness identification testimony, the court must first determine "whether the pretrial identification procedures were unduly or unnecessarily suggestive." *Brisco*, 565 F.3d at 88 (quoting *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). An identification procedure may be deemed unduly or unnecessarily suggestive, if it is based on police procedures that create "a very substantial likelihood of irreparable misidentification." *Perry v. New Hampshire*, 565 U.S. ---, 132 S. Ct. 716, 718 (2012)

(quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). As the Supreme Court noted, show-up identification procedures have been "widely condemned" because they are inherently suggestive. *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987); *Brisco*, 565 F.3d at 88. However, a show-up procedure, while suggestive, only violates the due process clause where it is unnecessarily suggestive. *Brisco*, 565 F.3d at 88.

Thus, a suggestive identification procedure may be warranted in the face of exigent circumstances, such as in the hospital where a victim was believed to be dying or at the scene of a crime where police officers are deciding whom to arrest and whom to release. *See, e.g., Stovall*, 388 U.S. at 302 (finding a one-on-one hospital show-up to be "imperative" under the totality of the circumstances); *Simmons*, 390 U.S. at 384 (suggestive identifications may not be unduly suggestive when they happen immediately following a crime, because they may be "sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them"); *United States. v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994) ("[A] prompt showing of a detained suspect at the scene of arrest has a very valid function: to prevent the mistaken arrest of innocent persons." (citations omitted)). In such cases, courts have found that the procedures, although suggestive, were not unnecessarily or unduly suggestive.

If the court finds that the procedure was not unduly or unnecessarily suggestive, the identification testimony may be admitted into evidence, where the jury can weigh its credibility. *Perry*, 565 U.S. ---, 132 S. Ct. at 725; *see also Foster v. California*, 394 U.S. 440, 442 n.2 (1969) ("The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury."); *United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir. 1994) ("[I]f impermissibly suggestive procedures are not employed, 'independent

reliability is not a constitutionally required condition of admissibility, and the reliability of the identification is simply a question for the jury.'" (quoting *Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir. 1986)). However, where identification procedures are found to be unnecessarily or unduly suggestive, the court must determine whether, under the totality of the circumstances, the identification is independently reliable, that is, whether the suggestive procedure resulted in a substantial likelihood of irreparable misidentification. *Manson*, 432 U.S. at 107.

In *Neil v. Biggers*, the Supreme Court set out five factors to be considered in balancing the suggestiveness of the procedures against evidence of reliability: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." 409 U.S. 188, 199–200 (1972). "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson*, 432 U.S. at 114; *see also Kennaugh v. Miller*, 289 F.3d 36, 44 (2d Cir. 2002) (concluding that established federal law includes both *Manson*'s general due process standard and the *Biggers* factors). "A good or poor rating with respect to any one of these factors will generally not be dispositive. . . . In each case, the factors must be assessed in light of the totality of the circumstances, and the linchpin of admissibility is reliability." *United States v. Concepcion*, 983 F.2d 369, 377–78 (2d Cir. 1992).

Petitioner argues that the initial identification procedure was unduly suggestive because it was a one-on-one show-up with Petitioner in handcuffs and surrounded by police officers, and unnecessarily suggestive because there were no exigent circumstances. (Pet. 6.) He also argues that the testimony at the pre-trial suppression hearing regarding the show-up procedure was

unreliable, because Wood was not with Stephen at the time that Stephen identified Petitioner as the perpetrator. *Id.* at 3.

The hearing court found exigent circumstances for the show-up procedure based on the close proximity to the time and location of the incident. (Hearing Tr. 48–49.) The court held that, under the totality of the circumstances, the procedure was not unduly suggestive and denied Petitioner's motion to suppress the identification evidence. *Id.* at 51. The Appellate Division agreed, finding that the hearing court properly denied the motion to suppress the show-up identification testimony because the show-up was spatially and temporally proximate to the commission of the crime and was not unduly suggestive. *Berry*, 856 N.Y.S.2d at 229–30.

This Court finds that the state courts' conclusions were not an unreasonable application of clearly established federal law. Although the one-on-one show-up—with a hand-cuffed suspect, standing next to police officers and the getaway vehicle—was suggestive, it was justified by exigent circumstances. The identification took place about an hour after the commission of the crime and only five minutes after the arrest. (Trial Tr. 70, 84.) The arresting officers were justified in seeking confirmation of whether they had arrested a likely suspect, in order to avoid arresting an innocent person. *See Bautista*, 23 F.3d at 730; *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972), *cert. denied*, 406 U.S. 927 (1972) ("[I]t is now settled law that prompt on-the-scene confrontation is consistent with good police work. . . . Prompt confrontation [is] desirable because it serve[s] to insure the immediate release of an innocent suspect and at the same time [to] enable the police to resume the search for the fleeing culprit while the trail is fresh." (internal citations and quotations omitted)); *Brisco*, 565 F.3d at 89 ("[W]e have instructed that where an officer has or should have doubts whether a detained suspect is in fact the person sought, the officer must make immediate reasonable efforts to

confirm the suspect's identity, and we have held that identification evidence from show-ups held in close temporal and geographic proximity to the crime scene may be admitted." (internal citations and quotations omitted)).

Since the state court found that the show-up was not unnecessarily suggestive, no further inquiry was required. Even if the show-up procedure had been unduly suggestive, this Court finds that the identification testimony was sufficiently reliable to have been admitted at trial. Although the state court did not reach the question of independent reliability, this Court has before it the record of the suppression hearing and the trial testimony. Using *Manson*'s totality of the circumstances test and the five factors set forth in *Biggers*, this Court finds that the identification is sufficiently reliable. First, the witness had ample opportunity to view the perpetrator at the time of the crime. The crime occurred in broad daylight. Stephen testified that he was able to see the face of the individual who robbed him and was able to describe the perpetrator as a light-skinned black male, wearing a striped shirt. The second *Biggers* inquiry considers the witness's degree of attention. It appears that Stephen was focused and attentive to the circumstances of the crime: he testified to his specific observations and had the presence of mind to notice and record the license number of the getaway vehicle. Thirdly, the witness gave a specific description of the perpetrator—a light-skinned black male, wearing a striped shirt—that matched Petitioner's appearance at the time of the arrest. As for the fourth *Biggers* factor, the witness demonstrated a high degree of certainty, both at the time of the initial identification, when he confirmed his identification to Officer Wood, and in his trial testimony. Finally, the lapse of time between the crime and the confrontation also weighs in favor of reliability, since less than an hour had elapsed. Thus, this Court finds that under the totality of the circumstances,

and applying the *Biggers* factors, the identification testimony meets the standard for reliability. The identification testimony was properly admitted at trial. Accordingly, the petition is denied.

### III. Conclusion

For the foregoing reasons, the petition for habeas corpus is denied and the Clerk of Court is directed to close the case. Because petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: September 19, 2012
Brooklyn, New York

/S/

_____
MARGO K. BRODIE
United States District Judge